Donald Irving Brothers, Appellant, v. John H. McMahon, Janet McMahon and Gilbert H. Hennessey, Jr., Appellees.

## Gen. No. 45,880.

Opinion filed September 29, 1953. Rehearing denied November 12, 1953. Released for publication November 12, 1953.

ROBERT B. COOK, of Chicago, for appellant; JACK M. SIEGEL, of Chicago, of counsel.

JOHNSTON, THOMPSON, RAYMOND & MAYER, of Chicago, for appellees; ADDIS E. HULL, and WILLIAM D. RANDOLPH, both of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an action at law under the Illinois Blue Sky Law, Ill. Rev. Stat. 1951, ch. 121½ [§§ 96–137; Jones Ill. Stats. Ann. 13.01–13.53], for the recovery of $1,600 paid by the plaintiff to defendants. The original complaint was stricken on defendants' motion and plaintiff filed an amended complaint. Defendant filed a motion to dis-

miss. The court entered an order striking paragraphs 10 and 12, and the first sentence of paragraph 14 of the amended complaint, and granting plaintiff leave to file an amendment thereto within ten days. Plaintiff elected to stand on his amended complaint and the court on motion of defendant Gilbert H. Hennessey, Jr., dismissed him as a party defendant. Plaintiff appeals from this order.

The facts in this case are not in dispute, being admitted for the purpose of this appeal by the motion to dismiss. The amended complaint reveals that as the result of an advertisement plaintiff and his wife contacted the McMahon Construction Company, an Illinois corporation, to purchase a housing unit in a co-operative apartment to be built by the corporation. John H. McMahon was the president of the corporation; Janet McMahon was the vice president and treasurer, and defendant Gilbert H. Hennessey, Jr. was the secretary of the corporation. The McMahon Construction Company was adjudged bankrupt prior to the commencement of this action. The company was engaged in erecting low cost, co-operatively-owned housing units in the City of Chicago. Plaintiff was informed that the company did not then have title to the land in question but was to acquire it and then transfer an undivided interest in it to the plaintiff. The purchase price was $10,600 for the unit, $1,600 of which was to be the down payment and the balance of $9,000 was to be paid from the proceeds of a loan on the premises. Plaintiff was given a brochure or booklet describing the proposed project.

On February 9, 1948, plaintiff made an initial payment of $100. On March 8, 1948, plaintiff paid the additional sum of $1,500. At this time he executed an agreement prepared by the corporation. The agreement provided that the company was given the right

to use all or any part of the earnest money and down payment made at the time of the execution of the contract for the purpose of acquiring good title to the land. The building was to be co-operatively owned and provision was made in the contract for title to be held by either a corporation or a land trust. If title was held by a corporation, plaintiff was to receive stock for his proportionate share and a long-term lease covering the apartment to be occupied. In the event title was held by a trust, plaintiff upon the completion of the building, was to receive a beneficial interest in the trust covering his interest in the premises.

The corporation and the McMahons agreed that the sum of $1,600 would be held by the defendant Hennessey until it was determined by the corporation which of the alternatives it would follow. If the plan for organization of a corporation were consummated plaintiff's $1,600 would be applicable to it and the plan for the trust would be eliminated, and if the trust plan were followed, plaintiff's down payment would be applicable to it.

The corporation acquired some right, title or interest in certain real estate upon which the proposed units were to be built. This property became involved in various obligations and debts of the corporation so that it was impossible for the corporation to actually come in or complete the construction of the housing unit in which plaintiff was interested. After the execution of the contract, the corporation, in violation of its promise, commingled plaintiff's funds with that of other projects which it was promoting. It became bankrupt. Defendant Hennessey was in no way implicated in this fraud. Plaintiff failed to recover his earnest money from the McMahon Construction Company and the project in which he was to receive an interest was never completed.

324

The striking by the trial court of paragraphs 10, 12 and the first sentence of paragraph 14, has the effect of prohibiting plaintiff from bringing his action against the defendants under the terms and provisions of the Illinois Securities Law.

The first contention of plaintiff is that the receipt, prospectus and proposed trust agreement, attached to the complaint as Exhibits A, B and C construed together in the light of all the attendant circumstances, constitute securities within the provisions of the Blue Sky Law. Defendant contends that plaintiff's description is not proper and that such documents are merely a receipt, descriptive literature and a contract for sale of an interest in real estate. We have examined these documents and find that the so-called prospectus describes a project in which is illustrated the co-operative features of a type similar to that that plaintiff was to purchase. The contract is a standard form for the construction and purchase of a dwelling unit. The McMahon Construction Company covenanted to perform two acts. One to convey good title to the buyer of certain described real estate subject to the usual provision that the title should be subject to special assessment, general taxes, building liens of record and like matters, and two, to construct upon the land so conveyed an apartment dwelling unit, the seller covenanting to furnish all materials and to perform all work necessary for the construction of the apartment unit pursuant to specifications. Then follows provision for financing. The buyer agreed to execute an agreement with other purchasers who would reside in the same co-operative dwelling unit as would insure the entire dwelling unit would be managed on a co-operative basis. To achieve this it was contemplated that plaintiff would have stock in a corporation or a beneficial interest in a land trust. These alternatives were

merely mechanical incidents to the basic contract which was for the sale of an interest in real estate. It is unquestionably the law that the entire transaction must be taken together and if it is illegal it would be illegal in its entirety.

The definition of a security, as stated in section 2 of the Illinois Blue Sky Law, Ill. Rev. Stat. 1951, ch. 121½, sec. 97 (1) [Jones Ill. Stats. Ann. 13.02, subd. (1)], reads as follows:

"(1) The word 'securities' shall mean and include stock, treasury stock, bonds, debentures, *investment contracts,* notes, evidences of indebtedness, participation certificates, certificates of shares or interest, preorganization certificates and preorganization subscriptions, certificates evidencing shares of or interest in trust estates or associations, profit sharing agreements or certificates; *or any certificate, contract or instrument whatsoever, representing or constituting evidence of, or secured by, title to or interest in, or any lien or charge upon, the capital or any property or assets of the Issuer thereof,* and any oil, gas or mining lease, royalty, or deed, and interest, units or shares in any such lease, royalty, or deed, income contracts, annuity contracts unless issued by insurance companies, bankers shares, trustees shares, investment participating bonds, investment trust debentures, units, shares, bonds, debentures and certificates in, for, respecting or based upon any form of securities or collateral, subscriptions and contracts covering or pertaining to the sale and/or purchase of securities on the installment plan, and any other instrument commonly known as a security, provided, however, that any contract or policy issued by an insurance company, which is under the supervision of the Department of Trade and Commerce of this State, shall not be deemed a security or

326

subject to any of the provisions of this Act." (Italics supplied.)

■ This court in the case of *In re Estate of Mc-Cormick*, 284 Ill. App. 543, in considering whether an ordinary real estate installment contract, in the usual form, for the sale of a specific lot in a subdivision, held that the term "investment contracts" or the term "contract constituting an interest in the property or assets of the issuer" had reference only to contracts which contemplated an investment of funds by the purchaser in the assets or property of the issuer with a view of receiving a profit through the efforts of the issuer. It held that the land contract involved was not a security within the meaning of the Blue Sky Law. The court said on page 553:

"At all times after the execution of the contract they had the right to acquire and own the specific real estate, and nothing more, and the subsequent proceeds of that property belonged to them. They had no interest whatever in any of the other lots in the subdivision or in any property belonging to the vendors or the proceeds thereof. No cases are cited bringing the ordinary real estate contract within the scope of the Securities Law. Sales of real estate have at all times constituted an important part of the total business transactions of this and other communities, and if the legislature had desired to include ordinary sales of real estate in the Illinois Securities Law it would have been a simple matter for them to have done so. Since such contracts are not specifically included in the Act, we must conclude that it was not the intention of the legislature to make them subject to Blue Sky legislation."

Further, in the case of *McCormick v. Shively*, 267 Ill. App. 99, 103, which is cited and approved in the *In re Estate of McCormick* case, this court said:

"Securities are generally defined as written assurances for the return or repayment of money or evidences of indebtedness. *Jaffe v. Goldner*, 251 Ill. App. 188; 37 Corpus Juris, 275. The act itself, under the definition of investment contract, defines it as one whereby the issuer agrees to pay or deliver a sum of money at a future time. There is nothing in the contract in question which includes any of these essential features."

 After examining plaintiff's Exhibits A, B and C in the light of these decisions, we must conclude that this is a contract for the sale of real estate and the rules as announced in *In re Estate of McCormick*, 284 Ill. App. 543, and *McCormick v. Shively*, 267 Ill. App. 99, must prevail.

Plaintiff further contends that the trust provision in itself, construed in the light of all the attendant facts and circumstances, is clearly a security within the meaning of section 2 of the Illinois Security Act (Ill. Rev. Stat. 1951, ch. 121½, sec. 97 (1):

(1) A certificate evidencing an interest in a trust estate; (2) a profit sharing agreement; (3) a contract or instrument "representing or constituting evidence of, or secured by, title to or interest in, or any lien or charge upon, the capital or any property or assets . . . ."

 In examining the record, we cannot find anything to indicate that this was the sale of stocks, bonds and other securities such as an interest in a business trust or so-called Massachusetts trust of a speculative nature. Plaintiff was buying a unit in a building which was to be erected by the McMahon Corporation. He was not sharing in the profits of the corporation nor was he buying anything other than an interest in the real estate with other joint owners. The medium of a land trust or corporation was used for the convenience

and protection of the parties who were to purchase an interest in the building. It is the common and usual method of handling such a transaction, which was co-operative in its nature.

This entire contention is answered by the case of *In re Estate of McCormick,* 284 Ill. App. 543, heretofore cited. The court in this case distinguishes *Prohaska v. Hemmer-Miller Development Co.,* 256 Ill. App. 331, upon which plaintiff strongly relies.

It is unfortunate that plaintiff came into the hands of unscrupulous individuals, who in violation of the terms of the agreement, diverted the money to their own use. Our responsibility is to construe this agreement and we find nothing under the terms of it which brings it within the provisions of the Illinois Securities Act. The decision of the trial court is affirmed.

*Decision affirmed.*

SCHWARTZ, P. J. and TUOHY, J., concur.