755 THIRD AVENUE REALTY CORP., Respondent, *v.* CELIA LUSTIG, Appellant.

First Department, March 29, 1956.

*Jay Leo Rothschild* for appellant.

*William Sardell* of counsel (*Multer, Nova & Seymour*, attorneys), for respondent.

BREITEL, J. Tenant, a rooming-house keeper who does not reside in the premises, appeals from an order of the Appellate Term reversing a final order of the Municipal Court dismissing landlord's petition to evict tenant.

The issue in the case is whether a landlord may evict a nonresident rooming-house keeper without first obtaining a certificate of eviction from the State Rent Commission under the State Residential Rent Law (L. 1946, ch. 274, as last amd.). Tenant contends that, under the provisions of the statute (§ 5, subd. 2), she may not be evicted unless there is first obtained a certificate of eviction. Landlord contends, on the other hand, that the statute is not designed to protect the possession of a rooming-house keeper, who, like tenant, does not reside on the premises and holds over under an expired lease, and that, under the regulations adopted by the State Rent Commission, there is explicit provision dispensing with the need for such certificate (State Rent and Eviction Regulations, § 9, subd. 10).

The order of the Appellate Term should be affirmed, it having properly held that landlord was entitled to bring summary proceedings to evict tenant without the necessity of first obtaining a certificate of eviction.

Landlord contends that the rooming house in question consists of 26 rooms and tenant contends that there are only 24 rooms. Resolution of this dispute is not necessary to determination of the issue, in the view taken, although, notably, the statute expressly excludes from its application rooming-house accommodations in which there are contained more than 25 rooms, rented or offered for rent (§ 2, subd. 2).

The statute provides for evictions in certain cases without a certificate of eviction (§ 5, subd. 1). This applies, of course, only to premises subject to the emergency statute. The statute further provides, however, that a landlord, wishing to recover possession of premises, obtain from the Rent Commission a certificate of eviction where he " seeks in good faith to recover possession of housing accommodations for which the tenant's lease or other rental agreement has expired or otherwise terminated, and at the time of termination the occupants of the housing accommodations are subtenants or other persons who occupied under a rental agreement with the tenant, and no part of the accommodation is used by the tenant as his dwelling " (§ 5, subd. 2, par. [b]). In consequence, it is argued, since a landlord may not obtain eviction where the rooming-house keeper resides in the premises, he must obtain a certificate of eviction where the rooming-house keeper is a nonresident. It is pointed out that, in any circumstance, even if tenant is nonresident, landlord must establish his good faith before obtaining a certificate of eviction. At the same time, there is no claim that the rooming-house keeper's rents, paid by her, are subject to control.

The purpose, and, therefore, the pattern, of the statute is to provide rent control for certain types of housing accommodations and in that connection to control evictions (*People ex rel. McGoldrick* v. *Sterling,* 283 App. Div. 88, 92). Control of evictions without corresponding control of rents becomes, practically, meaningless. Thus, a landlord who might be debarred from evicting a tenant whose rents were not controlled could accomplish the same result by simply increasing the rent to an unreasonable degree, and then, if the tenant failed to pay, evict such tenant under subdivision 1 of section 5 of the statute. Under that subdivision of the statute no certificate of eviction is required.

The courts have held that the statute does not contemplate the control of rents for a rooming-house keeper who is not in possession as a roomer or otherwise of any part of the premises, but sublets as an entrepreneur for his own profit (*Matter of Hurwitz* v. *McGoldrick,* 283 App. Div. 362, affd. 307 N. Y. 703). True, the *Hurwitz* case expressly stated that it was not passing upon evictions. But, as a matter of effectuating the purpose of the statute, and, in logic and practical operation, there is no meaning to the control of evictions where premises are not subject to the control of rents. Rent control — a species of price control — is the primary object of the statute. Control of evictions is incidental, albeit essential, to the control of rents. (This analysis is not inconsistent with the case of *Matter of McCoy* v. *McGoldrick,* 303 N. Y. 744, for in that case the primary issue was whether, on the facts, the rooming-house keeper occupied a portion of the rooming-house accommodation or whether his basement apartment was separable from the rooming-house enterprise.)

In any event, effective June 1, 1955, the commission adopted a regulation which makes it clear that the commission declines any authority to grant or deny certificates of eviction with respect to rooming-house premises in which the rooming-house operator does not actually reside. Thus, subdivision 10 of section 9 of the regulations provides that the regulations do not apply to the following: "*Structures subject to underlying leases.* Leases for entire structures or premises as distinguished from the individual housing accommodations therein contained, wherein more than 25 rooms are rented or offered for rent by any lessee, sublessee or other tenant of such entire structure or premises; leases for entire structures or premises as distinguished from the individual housing accommodations therein wherein 25 or less rooms are rented or offered for rent by any lessee or other tenant of such entire structure or premises and

such lessee, sublessee or other tenant does not occupy any portion of the structure or premises as his dwelling and sublets, as an entrepreneur for his own profit, the individual rooms to subtenants; or structures in which all of the housing accommodations are exempt or not subject to control under these Regulations.'' (Italics supplied.)

If the regulation is valid, then landlord in this case is not required to first obtain a certificate of eviction before proceeding to evict tenant. It is urged by tenant that the regulation is invalid because it exceeds the authority granted by the statute and contravenes the provisions of paragraph (b) of subdivision 2 of section 5 of the statute. The commission, under the statute, is given the broadest powers for adopting regulations to effectuate the statutory purposes. While this does not mean that the commission may contravene express statutory provisions, it is equally clear that it was intended that the commission have broad power to accomplish the purposes of the statute efficiently and without fruitless administrative red tape. Thus, subdivision 3 of the same section of the statute, which relates to evictions and contains the provision upon which tenant relies, provides: '' The commission may from time to time to effectuate the purposes of this act adopt, promulgate, amend or rescind such rules, regulations or orders as it may deem necessary or proper for the control of evictions. It may require that an order granting a certificate of eviction be obtained from it prior to the institution of any action or proceeding for the recovery of possession of any housing accommodation subject to a maximum rent under this act upon the grounds specified in subdivision two of this section or where it finds that the requested removal or eviction is not inconsistent with the purposes of this act and would not be likely to result in the circumvention or evasion thereof; provided, however, that no such order shall be required in any action or proceeding brought pursuant to the provisions of subdivision one of this section.'' A narrow reading of this section might limit the authority of the commission only to extending the area for requiring certificates of evictions. But that would be an unnecessarily narrow reading which would certainly not effectuate the purposes of the statute. More reasonably, the provision is to be read as authorizing the commission to dispense with the need for application for certificates of evictions in such cases where its determination would be exclusively ministerial and mandated by other provisions of law.

Thus, the intent and effect of the new regulation is to make clear that a landlord need not obtain a certificate of eviction

from the commission. However, the meaning and the effect of the statute is that, if a landlord, for whatever reason, makes appropriate application for a certificate, the commission, under paragraph (b) of subdivision 2 of section 5, is required to grant such certificate. So, for example, where a landlord is in doubt whether a tenant is protected by the emergency statute, he may apply to the commission for a certificate of eviction, and if he establishes the grounds therefor, it must be granted. This construction becomes further apparent from the unqualified clause which precedes the paragraphs in the statute designated (a), (b), and (c), and states that in the specified circumstances '' The commission shall issue such an order ''. Of course, as said earlier, this does not mean, if the commission does not so require it by its regulation, that the landlord must apply for such certificate.

On the facts, as conceded in this case, if landlord applies to the commission for a certificate of eviction, the certificate must be granted, because there is no dispute that it seeks to recover possession of the premises and that tenant occupies no part of the premises for her own dwelling. Such a needless and meaningless application the commission, already heavily burdened, is entitled to avoid requiring by a blanket regulation. In such a case as this the element of good faith involves the very narrow fact of whether landlord really wishes to recover possession. Obviously, it does, and that is not disputed.

It is suggested that circumstances might arise in which a landlord would obtain the eviction of a resident rooming-house keeper, under other provisions of the statute and regulations, of that part of the premises occupied by the rooming-house keeper for her own dwelling (cf. *Matter of Belotti* v. *McGoldrick*, 281 App. Div. 125, affd. 305 N. Y. 675). In that situation, if, thereafter, the landlord seeks to evict the rooming-house operator from the balance of the premises on the ground that the rooming-house operator is not a resident occupant of any portion of the premises, the eviction may be obtained without the intervention of the commission and the safeguard of a certificate of eviction first being obtained. The answer to that problem divides into several parts. In the first place, that is concededly not the situation here. Secondly, the element of good faith therein involved would relate to the first application in which it is sought to evict the rooming-house keeper from that part of the premises which she occupies as a dwelling, rather than to the later application to evict her from the balance of the premises. Thirdly, if there remains any problem or need for further remedy in this area, it is for the commission to amend its regula-

tion 9 in order to cover that particular hazard, not now before us. This it may easily do under the broad power granted to it by subdivision 3 of section 5.

In summary, the State Residential Rent Law provides no protection by way of rent control for a rooming-house keeper, who does not dwell in a part of the premises, and, as a further consequence, there is no mandate in the statute that a landlord must first obtain a certificate of eviction before removing such a rooming-house keeper whose lease has expired. While it was within the power of the commission under subdivisions 2 and 3 of section 5 to require that such a certificate of eviction be first obtained, it validly adopted a regulation in conformity with the statute to dispense with the need for such application, the control of evictions always being a subsidiary, albeit essential, implementation for the control of rents in various specified categories of housing accommodations.

Accordingly, the order of the Appellate Term, reversing the dismissal in the Municipal Court of landlord's petition in summary proceedings, should be affirmed.

PECK, P. J., RABIN, FRANK and BERGAN, JJ., concur.

Determination unanimously affirmed, with costs and disbursements to the respondent. [See *post,* p. 950.]