*154 OPINION OF THE COURT
Chief Judge Breitel.
This is a proceeding to enforce a money judgment, under CPLR article 52 on behalf of three creditors and lienors of the debtor Shor. They sought an order for the distribution of proceeds from the sale of Shor’s interest in his co-operative apartment. Fidelity National Bank, a judgment creditor of Shor interpleaded as a respondent, opposed the motion, asserting a prior lien on the proceeds. Special Term granted the motion, and a unanimous Appellate Division affirmed. Fidelity appeals.
The issue is whether the debtor’s interest in his co-operative apartment, that is, a stock certificate in the co-operative corporation and a "proprietary” leasehold granted by the corporation, is a "chattel real”, and hence, real property under CPLR 5203, thereby entitling a judgment creditor to a lien on the property merely upon docketing his judgment.
The order of the Appellate Division should be affirmed.
 The ownership interest of a tenant-shareholder in a co-operative apartment is sui generis. It reflects only an ownership of a proprietary lease, and therefore arguably an interest in a chattel real, conditional however upon his shareholder interest in the co-operative corporation, an interest always treated as personal property. The leasehold and the shareholding are inseparable. For some special purposes, the real property aspect may predominate (see Grenader v Spitz, 537 F2d 612, 617-620, cert den 429 US 1009; cf. United Housing Foundation v Forman, 421 US 837, esp 854-860, reh den 423 US 884). But, where priorities of judgment creditors are involved, the stock certificate and lease involved in the typical co-operative apartment transaction fit better, legally and pragmatically, although with imperfect linguistic formulation, into the statutory framework governing personal property. Since a co-operative apartment leasehold, inseparable from co-operative shares, is not a chattel real for purposes of CPLR 5203, Fidelity did not obtain a lien merely upon docketing its judgment.
In 1951, Shor purchased 1,400 shares in 480 Park Avenue Corp., a co-operative apartment corporation. He received a stock certificate and a proprietary lease on a duplex apartment. The lease provided the lessor with a "first lien” on Shor’s shares of stock for all monetary obligations arising *155 under the lease. Eventually, on February 23, 1973, Shor was evicted for nonpayment of maintenance charges, dating from 1971, and 480 Park Avenue Corp. claims a first lien of $63,908.22 for back maintenance, with interest, expenses, and attorneys’ fees.
Well before Shor’s eviction, in July, 1967, Shor, as guarantor of a loan made by Chase to a corporate borrower, had granted Chase "a security interest in [and] a general lien upon * * * all money, instruments, securities, documents, chattel paper * * * and any other property, rights and interests of the undersigned, which at any time shall come into the possession or custody or under the control of the Bank.” Chase had previously obtained possession of Shor’s stock certificate and proprietary lease as collateral. Following various defaults, Chase, on April 28, 1972, obtained a judgment against Shor for $44,222.67. Based on the judgment with added interest and expenses, Chase asserts a first lien of $67,800.17 plus attorneys’ fees in this proceeding.
On April 9, 1971, the State Tax Commission filed its first tax warrant against Shor. The commission levied execution on Chase on December 22, 1971, restraining Chase from making any transfer of the collateral. A similar levy was made on 480 Park Avenue Corp. on December 15, 1972. The Tax Commission’s lien is for an amount greater than the total of the proceeds from the eventual sale of the apartment.
On August 9, 1973, on motion of Chase, and upon stipulation among Chase, the Tax Commission, and 480 Park Avenue Corp., Special Term authorized the sale of the collateral. All other creditors of Shor consented to the sale reserving any liens and priorities they might have in the proceeds. Appellant Fidelity insisted on payment of $5,000 in return for its consent. On April 24, 1974, the sale realized $141,000. Chase now holds that sum in escrow at interest pending the outcome of this proceeding.
Not in dispute are the priorities among Chase, the Tax Commission, and 480 Park Avenue Corp. Those three subject to court approval, stipulated, on July 24, 1974, to divide the sale proceeds thus: $56,000 to 480 Park Avenue Corp., $64,000 to Chase, and the balance, plus accrued interest, to the Tax Commission. Then, on January 9, 1975, Chase interpleaded other creditors of Shor, seeking to distribute the fund according to the July 24 stipulation, and to be discharged from *156 liability to the interpleaded respondents. All of the inter-pleaded respondents, save Fidelity, defaulted.
Fidelity had obtained and docketed a judgment against Shor, for $152,589, on February 6, 1970, before Chase obtained any judgment against Shor, before Shor fell behind in his payments to 480 Park Avenue Corp., and before the State Tax Commission filed its warrants. Fidelity, however, never executed on the property. Although $40,000 of Fidelity’s judgment was paid, the remainder, plus interest, exceeds the fund in escrow. Fidelity’s contention is simple: Shor’s interest in his co-operative is a chattel real, and hence treatable as real property (CPLR 105, subd [r]). Therefore, docketing of the 1970 judgment gave Fidelity a lien on the property (CPLR 5203, subd [a]), and hence priority over all other creditors, none of whom, Fidelity asserts, obtained liens until after 1970.
The growth of co-operative ownership of apartment buildings, throughout the Nation, but especially in New York City, has created legal problems not resolved by uncritical resort either to the rubrics governing real property or those governing personal property (see Silverman v Alcoa Plaza Assoc., 37 AD2d 166, 173 [Steuer, J., dissenting]). The co-operative corporation owns the land and the building. Shares in the corporation are sold to each apartment "owner”, who receives a stock certificate, not a deed to real property. The shares entitle the shareholder to a long-term apartment "proprietary” lease. (See 4B Powell, Real Property [Rohan-rev ed], par 633.4.) One has, therefore, a mixed concept and terminology, superficially resembling the traditional rental apartment lease, except, for example, that the lessee pays monthly maintenance charges and is subject to assessments instead of rent. For some purposes it is a lease; for others it is a compact between co-operative corporation and co-operative tenant. In any case the rights of the tenant are initiated by the capital investment made in the shares of the co-operative corporation. (On the paradoxes with respect to co-operative apartment buildings and the desirability of legislative clarification see 4B Powell, Real Property, pars 633.51-633.52.)
By viewing the shares of stock as the dominant aspect of the co-operative transaction, as respondents do, one could easily conclude linguistically that the co-operative "owners” hold only personal property, little different from the shareholders in a commercial real estate corporation. By focusing instead on the proprietary lease, as does appellant Fidelity, one could *157 equally well conclude linguistically that the interest of the cooperative "owner” is real property, or at least a chattel real, which is treated as real property under the applicable CPLR provisions. Both approaches are overly facile. Neither the stock certificate nor the lease, inseparably joined, can appropriately be viewed or valued in isolation from the other. Nor may a dynamic jurisprudence ignore the manner in which economic affairs are conducted or the perception that the members of society have in conducting their affairs (see Cardozo, Nature of the Judicial Process, pp 60-64).
CPLR 5203, governing priorities and liens upon real property, provides, in part: "No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced,' is effective against the judgment creditor * * * from the time of the docketing of the judgment with the clerk of the county in which the property is located”. CPLR 105 (subd [r]) provides that, for purposes of the CPLR, real property includes chattels real. Thus, if Shor’s interest in his co-operative apartment were a chattel real, Fidelity would have priority over all creditors with liens created after February 6, 1970, the date its judgment was docketed in New York County.
By contrast, CPLR 5202 and 5234, governing rights and priorities of judgment creditors in personal property, require delivery of execution to the Sheriff before a creditor may obtain priority in the property. Since Fidelity has never delivered an execution, if the lease and stock certificate are treated as personal property, Fidelity’s interest must be subordinated to those of the other creditors.
Persuasive in this case are the 1971 amendments to the Banking Law which indicate strongly that priorities in the stock certificate and proprietary lease of a co-operative apartment corporation are to be treated under principles governing personal property (Banking Law, § 235, subd 8-a; § 380, subd 2-a). Both sections, dealing with permissible investments for various financial institutions, permit loans to finance purchase of ownership interests in co-operative apartments, provided the investment "is secured within ninety days from the making of the loan by an assignment or transfer of the stock or other evidence of an ownership interest of the borrower and a proprietary lease”. (See, also, Banking Law, § 103, subd 5.) No recording is required, as it would be in the case of a mortgage on real property (see, e.g., Banking Law, § 235, subd 8, par [1]; *158 see, also, 4B Powell, Real Property [Rohan-rev ed], par 633.51 [3]).
These provisions indicate a legislative intention that lenders in possession of the relevant documents of title be secure from claims of subsequent creditors without any filing or recording of the security interest. Thus, a possessory security interest in co-operative apartment stock and lease would be much like a possessory security interest in ordinary chattel paper, which requires no filing for perfection (see Uniform Commercial Code, § 9-305). By contrast, if the "ownership” interest in a cooperative apartment were to be treated as real property, mere possession without recording would subordinate the lender’s security interest to claims of other classes of creditors (see Real Property Law, § 291; Lien Law, § 13). Such a result could not have been intended by the Legislature seeking to protect the interests of banking depositors.
The only case on point is Matter of Lacaille (Feldman) (44 Misc 2d 370), decided in 1964, seven years before the Banking Law provisions previously discussed were enacted. Other cases cited by the parties deal with the status of the stock certificate and lease in a co-operative apartment for purposes other than priority of liens (e.g., United Housing Foundation v Forman, 421 US 837, reh den 423 US 884, supra; and Grenader v Spitz, 537 F2d 612, 617-620, cert den 429 US 1009, supra, involving application of the Federal securities acts and treating co-operatives for that purpose as realty; Silverman v Alcoa Plaza Assoc., 37 AD2d 166, 172, supra, involving forfeiture of a deposit on purchase of a co-operative and treating co-operatives as personalty). Different policy reasons underlie those decisions, and those reasons do not necessarily support or controvert their applicability to the problems at hand.
In Lacaille, Mr. Justice Matthew M. Levy, in a thoughtful opinion, concluded that a debtor’s interest in his co-operative apartment was a chattel real, and hence governed by the statute on priorities in real property (44 Misc 2d, pp 384-385). In that case, however, the judgment creditor not only docketed her judgment, but also levied execution on the debtor and the co-operative corporation, all within three weeks of recovering judgment (id., p 373). On the reasoning applied by Mr. Justice Levy, the priority between judgment creditor and co-operative corporation would have been the same had the property been treated as personalty rather than a chattel real. And, but for *159 a quirk in the Tax Law at the time of the transactions in the Lacaille case, a quirk caused by a drafting error and subsequently corrected, the court would not have had to make the categorization it did (see id., p 384).
Most important, in the years since the Lacaille decision, there has been an enormous expansion in co-operative ownership of apartment buildings. In addition, the condominium method of apartment ownership, new in New York at the time of the Lacaille decision, has become increasingly popular. Presented with the alternative of the condominium, which provides apartment dwellers with a kind of outright ownership of their apartments, many buildings have remained cooperatives, and kept the less direct form of apartment "ownership”. (See, generally, Symposium on the Law of Condominiums, 48 St John’s L Rev 677.) This conscious choice is not without jurisprudential significance in evaluating the nature of a co-operative "owner’s” interests.
Lastly, but cogent to the point of controlling, short of violation of public policy or positive law, co-operative tenants, co-operative corporations, and third parties dealing with them do not now, if they ever did, treat co-operative tenancies as chattels real. Indeed, the legislative response in the 1971 amendments to the Banking Law confirm this perception of the nature of the relationship in co-operative apartments and the quality of the property interest involved. The common-law process does not drag unwillingly the people it serves into a rigidly fenced corral, kicking, but reflects the fair conduct and expectations of fair, reasonable persons (see Gray, Nature and Sources of the Law, p 282).
Thus, changes both in the law, and in the banking and real estate fields, have caught up with and passed the Lacaille decision. No longer do most of the underpinnings for Mr. Justice Levy’s then persuasive opinion exist. Instead, intervening developments point towards a different result. Those developments should not and cannot be ignored.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.