OPINION OF THE COURT
Herbert A. Posner, J.
This is an action by a former tenant-stockholder to recover a $2,000 fee which he was forced to pay the defendant before approval would be given to permit the plaintiff to transfer his shares and assign his lease in the defendant’s building to a third party for $1,800.
At issue here is whether the corporation had a legal right to charge a $2,000 transfer fee in view of the fact that the proprietary lease provided for transfer privileges without mentioning any fee. The authority to charge the fee was given by the board of directors of the corporation pursuant to a *385 resolution adopted June 23, 1975 (nine months after the plaintiff purchased the stock and the proprietary lease). The defendant bases its case upon the broad authority granted the board of directors of a corporation under section 701 of the Business Corporation Law. Why the Business Corporation Law instead of the Cooperative Corporations Law? In the only decision that the defendant could find that was on "all fours” with this case, Judge Blangiardo in an unreported opinion (Reifman v Berkley Co-op. Towers, Civil Court, New York County, Jan. 31, 1975) pointed out that section 60 of the Cooperative Corporations Law entitled Directors; terms; election; duties, does not say one word about "duties.” "Therefore,” he said, "the court is mandated under Section 5[1] of the Cooperative Corporations Law to apply the Business Corporation Law, except where a conflict exists.” Judge Blangiardo upheld the corporation’s right to charge the co-operative tenant a transfer fee pursuant to a long-standing resolution of the board of directors, which had been amended a number of times to increase the amount (as inflation dictated). The plaintiff Reifman (as did the plaintiff in this case) objected to this charge on the grounds that the board lacked the power to pass these resolutions since the by-laws were silent and amendment to the by-laws required stockholder approval (which was never done).[2] Judge Blangiardo cited a number of cases to support the proposition that "[T]he management of corporations has been entrusted to their directors and officers and the judgment exercised by them is not reviewable by the courts, even if they do not agree with the soundness thereof, in the absence of circumstances establishing bad faith or breach of trust on the part of the directors.” (Smith v Baillie, 44 NYS2d 217, 220; Hanson v Ontario Mill Producers Co-op., 58 Misc 2d 138.) Judge Blangiardo also applied the test of "reasonableness” and in doing so stated: "It is the opinion of the Court that the resolutions were merely income-producing measures adopted for the benefit of all shareholders, and a *386 valid, good faith exercise of business judgment on the part of the Board of Directors, without any infringement upon the rights of shareholders.” (Hilltop Vil. Co-op. v Wolman, 13 Misc 2d 753; Vernon Manor Co-op. Apts. v Salatino, 15 Misc 2d 491.) Judge Blangiardo felt that the resolutions in question did not change the rights and duties of the parties under the terms of the by-laws and occupancy agreement, regarding transfer of membership.
While the occupancy agreement and the legal issues in the Reifman case are the same as in this one, the facts are not. Therefore, it is doubtful that Judge Blangiardo would have come to the same conclusion in this case. In the Reifman case the plaintiff had occupied her apartment for 13 years and sold it at a profit of $10,950 (a return of over 500% on her original investment). Even after payment of the transfer fee (which was $7 per share) of $2,870, the plaintiff still had a profit of $8,080 (a 400% return). This is obviously a reflection of the inflationary process that took place over the 13 years and the desirability of the apartment in its environmental setting. Furthermore, plaintiff obtained her pro rata benefit of transfer fees paid by others over the 13-year period. This resulted in unusually stable monthly maintenance charges which only went from $148 to $179 during this period. Under these circumstances it is not difficult to understand why the court did not find the $7 per share transfer fee to be unreasonable or oppressive.
However, "what is one man’s meat is another man’s poison.” In this case, Mr. Jamil purchased his apartment for $10,250 and (for personal reasons) was forced to sell it for $1,800 less than three years later at a loss of $8,450 (or almost 80% of the purchase price). After paying the transfer fee of $2,000, the loss was 102%. While the defendant did not concede that Jamil sold the apartment for $1,800 (since the sale was made to a friend), one of the defendant’s witnesses admitted that there had been a decrease in market value, since plaintiff bought his apartment, of anywhere from 20 to 40%. Another witness for the defendant (a former president of the co-op) stated that the original reason for the enactment of the transfer fee in this co-op (as well as many other similar coops) was to enable the remaining tenants to keep their maintenance costs down by having the departing tenant share a portion of his proñts (emphasis added) with the co-op.
While the result in the Reifman case was reasonable and *387 therefore just, the same result in this case would be unreasonable and therefore unjust. The intent of the board of directors in both cases was valid and based upon sound business judgment. However, the arbitrary manner in which they carried out their intent showed both a lack of compassion and an indifference to changing circumstances. The transfer fee was imposed (in both cases) arbitrarily so that a long-standing tenant (like Reifman) would pay the same fee as a short-term tenant (like Jamil); even though one sells at a huge profit (and has reaped the benefits from other sellers over a long period of time) and the other sells at a huge loss. In both instances, the imposition of the transfer fee should have been related to the benefits derived by the seller. Since time is the common denominator, a progressive fee related to the years of occupancy would have been reasonable and logical.
This court finds from the facts that the transfer fee imposed on the plaintiff was unreasonable and unrelated to the purpose for which it was imposed (that of having the seller share his profits with the co-op).[3] However, is the defendant nevertheless entitled to this fee on their legal rationale that "the management of corporations has been entrusted to their directors and officers and the judgment exercised by them is not reviewable by the courts” (Smith v Baillee, 44 NYS2d 217, 220, supra)? This court does not believe that this broad and discretionary power of "management” applies to the basic right of a shareholder to transfer his shares freely where there is no restriction in the by-laws or by operation of law. Subdivision (d) of section 508 of the Business Corporation Law states that "shares shall be transferable in the manner provided by law and in the by-laws.” The only restriction in the by-laws was that of "first refusal” by the corporation within 30 days. The evidence at the trial indicated that more than 30 days had elapsed after plaintiff offered his stock to the corporation. Furthermore, the defendant’s witnesses indicated that it was the policy of the corporation to permit the shareholders to sell on the free market. One of the main incidents of property is its transferability. Unless the right to transfer is subject to restriction by statute, corporate charter, by-laws or agreement, the shareholder is free to dispose of his property (60 NY Jur, Transfers of *388 Securities, § 72). A corporate resolution, demanding payment of a $2,000 fee before transfer will be made, is not included in the exceptions quoted above.[4]
The final question to be considered is whether the sale of shares in a co-operative corporation is really a securities transaction, to be governed by the Business Corporation Law or in reality the sale of a proprietory lease. If it is the latter, then the terms of the written agreement control and cannot be modified orally or by another document (the minutes of the board of directors) without reference. The proprietory lease was for a period of three years, from October 1, 1974 to September 30, 1977. It consisted of three sections; first, the occupancy agreement; second, the rules and regulations of the co-op; third, the by-laws. Nowhere is there any mention of a transfer fee or the delegation to the board of the power to set one. Plaintiff testified that had he known there was a fee charged to transfer his shares, he never would have purchased the apartment.
There have been a number of decisions in the past three years dealing with stock in a co-operative corporation and a proprietory lease. In all the cases, both the State and Federal courts recognized the underlying reality of the transaction. The Federal cases dealt with whether this was a true stock transaction and therefore subject to the Federal securities laws. The Federal courts have said "no.” They decided that the "purchasers were interested in acquiring housing rather than making an investment for profit” (United Housing Foundation v Foreman, 421 US 837, 860; Grenader v Spitz, 537 F2d 612, cert den 429 US 1009). The State decisions have likewise held that the lease and the stock are inseparably bound together as property for a common purpose — acquisition and usage of a residential leasehold (Matter of Tax Comm. v Shor, 43 NY2d 151; Silverman v Alcoa Plaza Assoc., 37 AD2d 166). As the Court of Appeals said in Matter of Tax Comm. v Shor (supra, p 157) "Nor may a dynamic jurisprudence ignore the manner in which economic affairs are conducted or the perception that the members of society have in conducting their affairs (see Cardozo, Nature of the Judicial Process, pp. 60-64).”
*389 Judgment for the plaintiff for $2,000, with interest, costs and disbursements.

. Section 5 deals with the "applicability of business corporation law to cooperative corporations.”

. In this case there was an existing corporate resolution under which the transfer fee on plaintiff’s apartment at the time he executed his lease was $1,000. This was subsequently increased to $2,000 on June 23, 1975. Plaintiff claimed he had no knowledge of the resolution when he signed his lease. One of defendant’s witnesses claimed he gave plaintiff "oral” notice. The burden of proof regarding this factual issue rested upon the defendant, since the "oral” notice was contrary to a written agreement (the lease). The court finds that the defendant did not sustain its burden.

. In Royal China v Regal China Corp. (279 App Div 515) the court said that the question of validity of a restriction upon a transfer usually turns upon the concept of "reasonable vs. unreasonable.”

. The courts have also indicated that restrictions should also appear on the stock certificate. (Matter of Lacaille [Feldman], 44 Misc 2d 370.)