Pechman v Lane (2025 NY Slip Op 50932(U))

[*1]

Pechman v Lane

2025 NY Slip Op 50932(U)

Decided on June 7, 2025

Civil Court Of The City Of New York, New York County

Meyers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through June 11, 2025; it will not be published in the printed Official Reports.

Decided on June 7, 2025
Civil Court of the City of New York, New York County

Louis Pechman and DOREEN PECHMAN, Petitioner,

against
Nancy Lane, Respondent.

Index No. LT-301446-25/NY

Herrick, Feinstein LLP (Andrew J. Wagner, Esq.) for Petitioners.

Adam R. Meyers, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of the motion:
Papers NYSCEF Doc. Nos.
Notice of Motion (Seq. 1) and supporting papers 7-11
Upon the foregoing cited papers, the court's decision and order is as follows:
Petitioners—two purchasers of the cooperative shares and proprietary lease for the premises after a judicially authorized execution—commenced this holdover proceeding in January 2025. The petition was predicated upon the prior service of a ten-day notice to quit (see Notice to Quit, NYSCEF Doc. No. 1, pp. 5-8). This notice directed the Respondent to quit the premises because, in the language of RPAPL § 713(1), "the property ha[d] been sold by virtue of an execution against [Respondent] and title of the sale ha[d] been perfected" (id.). The notice also indicated that any license issued to the Respondent had been revoked, suggesting an alternative basis for the proceeding under RPAPL § 713(7).
Respondent failed to appear in court on the initial return date, and after adjournment an inquest was conducted. In its decision and order dated May 11, 2025 (NYSCEF Doc. No. 6), the court declined to award judgment in favor of the Petitioners after inquest and ordered that the proceeding be dismissed. The court reasoned:
[C]ourts have consistently held that a licensee holdover proceeding under RPAPL § 713(7) does not lie against a former proprietary lessee (Fed. Nat. Mtge. Assn. v Simmons, 48 Misc 3d 24, 25-26 [App Term, 1st Dept 2015]; Fed. Home Loan Mtge. Assn. v Perez, 40 Misc 3d 1 [App Term, 2d Dept 2013]). Neither could the case be sustained under RPAPL § 713(1), because the shares and proprietary lease are personal property rather [*2]than real property (id.). Instead, under these circumstances a summary eviction proceeding must be brought under RPAPL § 711(1) against the former proprietary lessee as a holdover tenant (Chass Properties, LLC v Cobb, 85 Misc 3d 128 [A] [App Term, 2d Dept 2025]).
(NYSCEF Doc. No. 6, pp. 1-2).
Petitioners now move under CPLR § 4404(b) that the court set aside its prior order. Clarifying that the petition relied only upon RPAPL § 713(1) rather than § 713(7), they argue that the precedent cited by the court is distinguishable insofar as each of those cases considered cooperative shares sold pursuant to Article 9 of the Uniform Commercial Code. Here, by contrast, the 
shares were sold pursuant to an execution specifically authorized by the Supreme Court. For this reason, argue Petitioners, § 713(1) is a proper basis for this petition despite the holdings of Perez, Simmons and Cobb.
At the outset, the court is compelled to acknowledge that this issue is somewhat absurd. Petitioners have secured for themselves the cooperative shares and proprietary leases for the units in question, and it is likely that they will ultimately be found entitled to recover possession. The question is whether they are so-entitled under the theory articulated in this petition, and upon the specific notice they served in this case. While much of the law may have "outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal," (Wood v Lucy, Lady Duff-Gordon, 222 NY 88, 91 [1917] [Cardozo, J.]), summary eviction proceedings remain creatures of statute wherein relief is available only in those cases specifically authorized by Article 7 of the Real Property Actions and Proceedings Law (Dulberg v Ebenhart, 68 AD2d 323, 328 [1st Dept 1979]). Where a petitioner cannot prove facts showing entitlement to relief upon the specific grounds asserted in the predicate notice, the petition must be dismissed, irrespective of whether an alternative theory might be viable (see, e.g., Bray Realty, LLC v Pilaj, 59 Misc 3d 130(A) [App Term, 2d Dept 2018]). While esoteric, the question considered here is a necessary one.
The relevant facts are these. Respondent is the former owner of 585 shares of stock in the cooperative corporation that owns the building at 45 West 10th Street (see Inquest Exhibits 6-7). The ownership of these shares entitled her to proprietary leases for Units 5C and 5D at the building (see Inquest Exhibit 7). In March 2024, the cooperative corporation obtained a default judgment against Respondent in the amount of $377,878.20 (see Inquest Exhibit 1). In July 2024, the cooperative corporation was authorized by the Hon. Lyle E. Frank, J.S.C., to collect this judgment by executing upon Respondent's interest in the Premises (see Inquest Exhibit 2). On November 1, 2024, a city marshal conducted an auction at which Petitioners were the successful bidders (see Inquest Exhibit 3). On or around December 16, 2024, the cooperative corporation cancelled the stock certificates and proprietary lease that had been issued to Respondent and reissued the same to Petitioners (see Inquest Exhibits 6-10). Petitioners then commenced the instant holdover proceeding after serving on Respondent a ten-day notice to quit (see Petition, NYSCEF Doc. No. 1).
Petitioners argue that on these facts, they are entitled to relief under Section 713(1) of the Real Property Actions and Proceedings Law. This provision—contained in the list of grounds upon which summary eviction proceedings can be commenced where no landlord-tenant relationship exists—provides that a special proceeding can be maintained where
[t]he property has been sold by virtue of an execution against him or a person under whom he claims and a title under the sale has been perfected.
(RPAPL § 713 [1]).
In rejecting the application of this provision to the eviction of former proprietary lessees after the forced sale of the associated cooperative shares, the appellate terms for the First and Second Departments have focused on two parts of this statutory language. First, given the statute's explicit reference to an execution, they have rejected non-judicial sales under the UCC as improper bases for proceeding under this provision (see Fed. Home Loan Mtge. Assn. v Perez, 40 Misc 3d 1, 4 [App Term, 2d Dept 2013] ["As tenant's shares and proprietary lease were sold at a nonjudicial sale, there has been no judgment and no 'execution.'"]). Second, they have emphasized the statute's reference to the property. Reading this provision alongside RPAPL § 701(1), courts have limited application of § 713(1) to cases involving the sale of real property pursuant to an execution, and have distinguished the sale of cooperative shares on the basis that these represent personal rather than real property (Fed. Nat. Mtge. Assn. v Simmons, 48 Misc 3d 24, 26 [App Term, 1st Dept 2015] [finding § 713(1) not to apply because "the property sold, viz., the shares and proprietary lease, were 'personal property,' not 'real property."]; see also Perez at 3 ["In the case of a cooperative apartment, it is the cooperative corporation which owns the real property, and the tenant holds the shares in the cooperative corporation and a proprietary lease for his apartment. The sale of the shares and the lease is not a sale of the 'real property.'"]).
Petitioners argue persuasively that this case can be distinguished from Perez with respect to the first point. While Perez—and Simmons and Cobb as well—addressed a sale effectuated without court involvement under Article 9 of the UCC, the sale here followed a judicial execution. So the reference in the statutory text to an execution poses no problem in this case.
Petitioners' task is more difficult in distinguishing this case from Perez and Simmons with respect to the second question, viz., whether the sale giving rise to Petitioners' claim was for these purposes a sale of real property resulting in perfected title. Indeed, no distinction can be drawn between Simmons and the instant case regarding the nature of the property involved. In both cases, the property sold was a) shares of stock in the cooperative corporation and b) the associated proprietary leases. This would seem to be a problem for Petitioners' argument.
Petitioners try to address this problem by emphasizing the chimeric nature of cooperatives. It has long been held that whether a shareholder's interest in a cooperative unit represents real or personal property is context-dependent, and that attempts to categorize it universally as one or the other are "overly facile" (Matter of State Tax Commn. v Shor, 43 NY2d 151, 157 [1977]). Rather, courts "have assessed on a case-by-case basis which aspect of this paradoxical interest predominates, in order to determine the applicability of a particular rule of law or statutory scheme" (Matter of Carmer, 71 NY2d 781, 784 [1988]).[FN1]
For example, in determining the priority between judgment creditors as to cooperative shares courts have applied principles applicable to personal property (Shor, 43 NY2d at 157), but because the same shares [*3]constitute an interest in real property, the statute of frauds has been found applicable to cooperative contracts of sale (Rosner v 80 CPW Apts. Corp., 73 AD2d 39, 41 [1st Dept 1980]).
Petitioners argue that in conducting the Carmer case-by-case analysis here the determinative factor is that they secured their execution as to the cooperative shares in a special proceeding under CPLR § 5206(e) to sell property subject to the homestead exemption. This section is titled "Real property exempt from application to the satisfaction of money judgments" and lists "shares of stock in a cooperative apartment corporation" as property to which the homestead exemption applies. Because the present case follows a § 5206(e) proceeding, they suggest, the real property aspect of the cooperative shares predominates to a greater degree than it would following a sale under Article 9 of the UCC—which, of course, is a tool available to creditors insofar as the shares constitute personal property. Thus, they argue, a § 713(1) cause of action is viable here despite the holdings of Perez and Simmons.
This argument is intriguing but ultimately unsuccessful. In Shor, Carmer, and their progeny, courts have considered the pragmatic consequences of applying the various rules of personal or real property to cooperatives (see, e.g., Shor, 43 NY2d at 154 [finding that for certain purposes the cooperative interest "fit better, legally and pragmatically, although with imperfect linguistic formation" into the personal property framework]; Chiang v Chang, 137 AD2d 371, 375 [1st Dept 1988] [explaining that the analysis should consider such factors as the manner or conduct of economic affairs at issue, the perceptions and expectations that members of society have in conducting their affairs, and the interests being advanced by any statutes applicable or relevant to the subject matter before the court]). Despite the different procedural vehicles that led there, sales of cooperative stock following judicial executions and those permitted under Article 9 of the UCC implicate precisely the same practical interests and expectations. In both cases, the shares in the cooperative corporation and the proprietary leases associated therewith are sold in order for a creditor to recover on a debt; in both cases, after the sale, the stock certificate and proprietary lease of the debtor are cancelled by the cooperative, and the cooperative then issues a new share certificate and proprietary lease to the purchaser. In both cases, after the satisfaction of the debt in question and any other liens or qualifying expenses, any surplus is returned to the debtor. There is simply no practical consideration supporting a legal distinction on this basis.
Beyond this narrow point, the remainder of Petitioners' brief argues, in essence, that Perez and Simmons were wrongly decided to the extent that they found sales of cooperative interests not to be sales of real property as contemplated by § 713(1). Petitioners note first—and uncontroversially—that cooperative apartments have been broadly held to involve real property under RPAPL § 701(1), and that they are therefore the proper objects of summary eviction proceedings. They argue next that the plain language of § 713(1) makes no reference to real property, such that a sale even of personal property by virtue of an execution and resulting in perfected title is sufficient to support an eviction proceeding under this section.
The first of these points is valid but of limited consequence. Courts have long recognized that a cooperative unit—that is, the physical unit itself—is real property such that a proper party can recover possession of it by a summary eviction proceeding (see, e.g., 542 Morris Park Ave. Corp. v Wilkins, 120 Misc 48, 51 [App Term, 1st Dept 1922]). But this does not settle the question of whether the particular theory elected by the Petitioners under Article 7 is borne out by the facts at hand.
Petitioners work valiantly to force the sale of a cooperative unit into the terms of § 713(1) but cannot make it fit without stretching the statute's language to the breaking point. They [*4]note correctly that § 713(1) does not include the phrase 'real property,' only 'the property.' But in the context of the surrounding language, 'the property' could mean nothing other than the property of which Petitioners seek to recover possession—i.e., the real property embodied within the physical space of the cooperative unit. The statute then speaks of this property having been sold, and of the perfection of the title resulting from this sale. But in the cooperative context, the property itself is not sold. Both before and after the sale, fee ownership of the relevant real property is with the cooperative corporation—the proprietary lease changes hands, but this does not extend to the lessee a right of ownership, only of possession (Frisch v Bellmarc Mgt., Inc., 190 AD2d 383, 387 [1st Dept 1993]). To claim that after the purchase of the shares of stock and the reissuance of the proprietary lease 'a title under the sale has been perfected' is to speak only metaphorically, abstracting these terms of art from their typical use in the context of deeds and fee ownership. On a fundamental level, § 713(1) does not describe the mechanism involved in forced cooperative sales, wherein the purchaser obtains his possessory rights not from the sale per se but from his execution of a lease with the cooperative corporation (see Chass Properties, LLC v Cobb, 85 Misc 3d 128 [A] [App Term, 2d Dept 2025]; see also Newell Funding LLC v Tatum, 24 Misc 3d 597, 601 [Civ Ct, Kings Cnty 2009] [petitioner that had purchased cooperative interest at non-judicial sale had no possessory rights where cooperative corporation had not issued it a proprietary lease]). Therefore, Petitioners cannot obtain relief under this provision, and this proceeding is properly dismissed.
But while Petitioners' theory in this case fails, relief in a summary proceeding is still potentially available to them. The core allegations here—that Respondent's proprietary lease was cancelled by the cooperative corporation, and that a new proprietary lease was issued to Petitioners—constitute proper grounds for a proceeding under RPAPL § 711(1). That section allows for a summary eviction proceeding to be maintained where
[t]he tenant continues in possession of any portion of the premises after the expiration of his term, without the permission of the [... ] new lessee.
(RPAPL § 711 [1]). A summary proceeding may be maintained by a "lessee of the premises, entitled to possession" (RPAPL § 721 [10]). A new proprietary lessee after a forced cooperative sale may utilize this provision to obtain possession from their predecessor (Cobb, 85 Misc 3d at 128 [A]; Spira v Douglas, 67 Misc 3d 258, 262 [Civ Ct, Bx Cnty 2020]). The dismissal here is without prejudice to Petitioners seeking possession under this alternative provision in a new proceeding after service of any necessary predicate notice.
THEREFORE, it is
ORDERED that Petitioner's motion is denied.
This constitutes the decision and order of the court.
Dated: June 7, 2025
New York, New York
Hon. Adam R. Meyers
Judge, Housing Court

Footnotes

Footnote 1:On the difficulty of fitting cooperative interests into fixed legal categories, see Note, Legal Characterization of the Individual's Interest in a Cooperative Apartment: Realty or Personalty?, 73 Colum L Rev 250 [1973].