THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH D. McGOLDRICK, as State Rent Administrator, Appellant, and MONROE JACOBS et al., Interveners, Appellants, against EDWARD C. STERLING et al., Respondents.

First Department, December 8, 1953.

*Robert H. Schaffer* of counsel (*Norman S. Fenton* with him on the brief, attorney), for appellant.

*Leonard M. Wallstein, Jr.,* of counsel (*Benjamin Menschel* with him on the brief; *Wallstein, Menschel & Wallstein,* attorneys), for interveners, appellants.

*George Brussel, Jr.,* of counsel (*Rosston, Hort & Brussel,* attorneys), for respondents.

BREITEL, J. The question is whether an owner of real property — a multiple dwelling — may cut off the possessory rights of statutory tenants under the State Residential Rent Law (L. 1946, ch. 274, as amd.) by transferring the property to a corporation under a so-called " co-operative plan " and selling to strangers, without offering to the tenants, the shares allocated to their apartments.

We believe that the statute and regulations by implication do not so permit; that the regulations, as distinguished from the statute, were certainly not intended to so permit; and that, in any event, if the regulations so permit they are invalid and of no effect to that extent, because not in effectuation of the purposes of the statute, and indeed, in contravention thereof.

This is what happened.

Edward C. Sterling had become the sole owner of 1133 Park Avenue, a multiple dwelling with thirty-two apartments. From 1934 to 1953, Mr. Sterling and his family had owned bonds secured by the building — some $306,500 worth out of a total bonded indebtedness of $504,000. In 1953, when the building was in reorganization, Mr. Sterling bid at public auction for the property, and took title on May 21, 1953.

In June, 1953, Mr. Sterling caused 1135 Park Avenue Corporation to be organized under the Stock Corporation Law (not the Cooperative Corporations Law). On June 29, 1953, the " co-operative plan " was promulgated over the subscription of the managing agents for the building.

The plan provided that of the thirty-two apartments in the building nineteen were allocated to occupant tenants. They would have the privilege of purchasing shares in the corporation allocated to their respective apartments and thereby obtain so-called " proprietary leases ". As to the remaining thirteen apartments it was provided in the agreement for the sale of

the building to the newly organized corporation that: " As part of the consideration for this sale and the conveyance of title by the Seller [Mr. Edward C. Sterling] to the Purchaser, the Organizer of the Cooperative Plan of Organization referred to in the annexed Plan of Cooperative Organization, shall have the right to purchase and acquire 3,335 shares of the stock of the Corporation allocated to apartments: 1-E, 2-E, 3-E, 5-E, 16-E, 1-SE, 1-W, 2-W, 3-W, 6-W, 9-W, 16-W, and PH-W and to execute Subscription Agreements and Proprietary Leases covering said shares and apartments."

The excepted apartments have been transferred to Mr. Robert D. Sterling, father of the seller. Some of the excluded tenants desire to purchase co-operative interests in their apartments, and at least one of them made a tender to purchase an interest in his at the price scheduled in the plan.

The effect of this " co-operative plan " is that occupant tenants of the apartments reserved for the " organizer " were not permitted to purchase " co-operative " interests in their apartments. The further effect would be that after a two-year lapse as provided in subdivision 3 of section 55 of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission, the stranger purchasers of the shares allocated to the thirteen reserved apartments would be able to obtain certificates of eviction and remove the occupants. So the defendants contend. Indeed, they concede that the purpose of this Sterling plan is to allow the owner's father, Mr. Robert D. Sterling, to whom the reserved apartments were " sold ", to speculate with the reserved apartments, sell them, and make a capital profit.

Upon the trial plaintiffs sought to show, but the evidence was excluded, that the seven residential tenants who were precluded from purchase of co-operative interests in the building were especially selected because of their efforts in the past in resisting rent increases before the Rent Administrator and in making complaints with respect to the maintenance of services.

The Rent Administrator brings this action for judgment enjoining defendants — members of the Sterling family who participated in the Sterling plan, the newly organized corporation, and the managing agents — from proceeding with the plan. He claims that it was designed illegally to circumvent the statutes and the regulations thereunder. A number of the tenants, excluded from the privilege of purchasing stock under the Sterling plan, intervened as plaintiffs. They seek a

declaratory judgment, in addition to injunction, that the Sterling plan is invalid, void and of no effect.

Pending determination of the action a temporary injunction was obtained and the plan has consequently not progressed. Upon the trial the court dismissed the complaints at the close of the entire case. In effect, the trial court held that the Sterling plan involved nothing more than a series of legal acts and that Mr. Sterling had a right to do with his property as the plan contemplated.

We cannot wholly agree with the contentions of either side to this controversy.

The State Residential Rent Law (L. 1946, ch. 274, as last amd. by L. 1953, ch. 321) sets up a system of regulation of rented residential dwellings on an emergency basis. Power is given to the Rent Commission to establish maximum rents. Tenants of controlled premises are entitled to possession so long as they pay the rent due, subject to certain exceptions. They may be removed, save in the case of the exceptions, only if certificates of eviction are first obtained from the Rent Commission. The State's police power is exercised through control of evictions. It is thus in that area that one must find warrant or prohibition for the operation of the Sterling plan. It is not in the province of the court to pass upon the character of ownership or the method of transfer of title that Mr. Sterling may propose for property owned by him. The statute does not purport to regulate title or transfer of title. It does, as already stated, impose controls on maximum rents and evictions.

Co-operatively owned apartments are not mentioned in the statute, except for a single reference not applicable to this case (§ 4, subd. 4, par. [a], cl. [3]). Hence, the right to obtain orders for certificates of eviction with respect to co-operatively owned apartments must be found in sections of the statute that deal generally with certificates of eviction.

Paragraph (a) of subdivision 2 of section 5 is pertinent. It reads in part:

" The commission shall issue such an order whenever it finds that:

" (a) the landlord seeks in good faith to recover possession of housing accommodations because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family; provided, however, that where the housing accommodations are located in a one- or two-family house and the landlord seeks in good

faith to recover possession for his own personal use and occupancy, an immediate and compelling necessity need not be established ".

Under the Sterling plan the owner of the fee would be 1135 Park Avenue Corporation. The purchasers of stock in the corporation are entitled to "proprietary" leases to apartments for which specific shares of stock have been allocated. The lessee in the lease is in much the same position as any other tenant under the usual leasing arrangement. The reason is undoubtedly the wish to retain for the corporation the facile and summary remedies that are available to the ordinary landlord, in the event the lessee defaults in his obligations.

The statute defines a landlord as one entitled to the rent for use or occupancy of any housing accommodation (§ 2, subd. 6). Thus, a tenant of an apartment may be a " landlord " to his subtenant. The proprietary leases in this case provide that the lessee is entitled to the rents of his apartment if there is an existing statutory tenancy.

Of course, a statute may not be read so literally that it yields in application a nonsensical result. In the context of a plan, such as the Sterling plan, the 1135 Park Avenue Corporation is the landlord, not the stranger to whom its shares are sold. The co-operative lessee becomes entitled to the rents by assignment and not by virtue of the statutory tenant being his sublessee. (See *Matter of Danforth* v. *McGoldrick*, 201 Misc. 480, 482–483 [Special Term, N. Y. Co., 1951, CORCORAN, J.].) (We note again that it is the shares in the corporation that are sold, and despite a vernacular usage to the contrary, the apartment is not sold, but leased under a so-called " proprietary " lease.)

Consequently, no warrant is found in the statute for granting certificates of eviction to purchasers of shares in the so-called " co-operatively-owned " corporation in this case. If warrant exists for granting the certificates, it must be found in the regulations promulgated by the Rent Commission under the very broad rule-making powers conferred on it (§ 4, subd. 4, par. [a] ; § 4, subd. 5, par. [a] ; § 4, subd. 5, par. [b] ; § 5, subd. 3; § 6, subds. 1, 2; § 12, subd. 1).

Subdivision 3 of regulation 55 reads as follows:

" In the case of housing accommodations in a structure or premises owned by a cooperative corporation or association, a certificate shall be issued by the Administrator to a purchaser of stock or other evidence of interest to possession of such housing accommodations by virtue of a proprietary lease

or otherwise where (a) the tenant originally obtained possession of the housing accommodations by virtue of a rental agreement with the purchaser; or (b) the purchased stock was acquired by the landlord more than two years prior to the date of the filing of the application; or (c) the purchased stock was acquired less than two years prior to the date of filing of the application and on that date stock in the cooperative has been purchased by persons who are tenants in occupancy of at least 80 percent of the dwelling units, in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises; or (d) the cooperative was organized and acquired its title or leasehold interest in the structure or premises before February 17, 1945 and on that date stock in the cooperative allocated to 50 percent or more of the dwelling units in the structure or premises was held by individual owners, who are or whose assignees or subtenants are tenants in occupancy of such dwelling units in the structure or premises at the date of the filing of the application.

'' For the purposes of this paragraph the term ' tenants in occupancy ' includes only (1) a person who purchased the stock allocated to a vacant apartment; or (2) a person who while he was a tenant in occupancy in the building, purchased the stock allocated to his or some other housing accommodation in the building for personal occupancy; or (3) a person who purchased the stock allocated to a housing accommodation which is occupied by a tenant who obtained his possession from said purchaser of the stock; or (4) a person who purchased the stock allocated to an apartment from an owner of such stock who was in occupancy of such apartment.

'' For the purposes of this paragraph the term ' housing accommodation ' shall not include servants' rooms which are non-housekeeping and located in the service portion of the building, and the term ' tenant ' shall not include the persons occupying such servants' rooms. Any application under this paragraph must also comply with the requirements of paragraphs 1 and 4 of this section; provided, however, that where the applicant seeks to recover possession for his own personal use, he need not establish an immediate and compelling necessity.''

It should be noted that the regulation refers to a purchaser of stock under a co-operative plan as a landlord. Earlier it was said that the statutory reference to a landlord did not include the holder of a proprietary lease. There is only a

superficial inconsistency produced by the draftsman of the regulation. There can be no question that the regulation refers to a holder of a proprietary lease. We do not question the effect of that reference, so long as the rent commission had the power to make the regulation in question. It had that power if it is construed to conform with the purpose of the statute in protecting statutory tenants.

The Rent Administrator contends that from a reading of the whole regulation it is evident that primarily tenants in occupancy as statutory tenants are to be protected; hence, the punctilious provisions with respect to the 80% requirement and the definition of tenants in occupancy. He contends that the same punctilious and intended protection must be read into that branch of the regulation which provides for granting certificates of eviction, after a two-year lapse, even if 80% of the occupant tenants have not subscribed to the co-operative plan. Consequently, he argues, the two-year option provision would have the very reverse effect of that intended if occupants were not given an option to " purchase " their apartments before they were " sold " over their heads.

A serious question may be raised, although it was not, as to the applicability of the regulation to the corporation in the particular Sterling plan. It is questionable indeed whether a corporation is embarked on a co-operative plan, within the meaning of the regulation, at least, when thirteen out of thirty-two apartments are to be reserved for private manipulative speculation before they will come to rest as co-operative units. We submit that it is not. It is then but a part co-operative. A sensible reading of the regulation suggests that it was contemplated that a co-operative might be set up for the tenants in occupancy. If 80% went along, the participants in the plan are eligible for the benefits of the regulation. If more than 20% of the tenants hold out, even then, the plan may go forward and after the lapse of two years the participants may rely on the alternative requirement prescribed in the regulation. A plan which will be co-operative for strangers to the premises hardly matches the stress placed upon the provisions as to who are " tenants in occupancy ".

The Federal statutes and regulations which preceded the State statutes did not have the two-year optional provision (U. S. Code, tit. 50, Appendix, § 1899; Code of Fed. Reg., tit. 24, § 852.26, subd. [c], par. [1], cl. [ii]). Neither did the State regulations prior to 1951. The Temporary State Housing Rent Commission in proposing the change (1951 Rent Control Plan,

p. 32) said: " In proposing this change in the Regulations, the Commission does not intend to abandon its position that the right of the recent purchaser of stock allocated to a coop- erative apartment to evict the tenant in possession must be limited to avoid improper pressures upon such tenants to purchase stock in dormant or new cooperatives.''

Implicit in the regulation and explicit in the proposal for the amended regulation is the concept that it is the occupant tenant to whom rights to the possession of the apartment will be offered. Any other view would permit owners, by the device of the Sterling plan, to remove first large portions, and later the whole of multiple dwellings from the rent control laws, without the intended protection to statutory tenants.

The regulations contain an interesting provision which exemplifies the plan of protection for statutory tenants. Sec- tion 57 authorizes subdivision of larger apartments, but con- ditioned upon providing options to, or in the alternative, relocation of, tenants displaced by the alterations.

This court has heretofore recognized that co-operative apart- ment plans are subject to supervision if their effect may be to frustrate the policy of the State in controlling maximum rents and evictions (*Judson* v. *Frankel*, 279 App. Div. 372). In that case it was noted by Mr. Justice VAN VOORHIS, now Associate Judge of the Court of Appeals, that: " It is not clear, nevertheless, that the intent of the Rent Commission or of the Legislature was to allow statutory tenants to be con- fronted with the alternatives of purchasing their apartments or of being evicted, at least unless they originally become tenants under leases from owners of separate, individual co-operative apartments, and except at the instance of such individual apartment owners, their successors or assigns.'' (P. 373.)

It was said further: " Plaintiffs should have the right to test out the question as to whether the co-operative scheme proposed by the defendants is a device to evade and circum- vent the emergency rent control laws intended for the pro- tection of the tenants.'' (P. 374.)

Surely, if an unfairly capitalized co-operative scheme may circumvent the laws by depriving the tenant in occupancy of a reasonable alternative to eviction, the absence of any alterna- tive, reasonable or unreasonable, comes within the strictures of the ruling in *Judson* v. *Frankel.*

But let us assume that the regulation is to be read very literally, as defendants contend, and that the two-year provi-

sion serves to cut off the possessory rights of statutory tenants after the lapse of two years. Then, we say, the regulation is to that extent null and void. This would be so because it would no longer be in effectuation of the purposes of the statute but in conflict therewith (*Matter of Hoenig* v. *McGoldrick*, 281 App. Div. 663). The effect would be, indirectly, to decontrol premises, without warrant in the statute, at the option of owners who could successfully traffic in proprietary leases to the exclusion of tenants in possession. The statute does not give the Rent Administrator power to decontrol premises or categories of dwellings except as particularized in the statute. Consequently, he has no power to make a regulation that would have that effect indirectly. The absence of such delegation of power contrasts with the delegation of power to decontrol and recontrol areas, and under certain circumstances, categories of housing accommodations in the State, when findings are made and particularized standards are met (§ 12).

We would hesitate to declare invalid the two-year provision of subdivision 3 of section 55 of the regulations. Its purpose and effect can be validly retained if it is implied that it, like the balance of the regulation, requires a reasonable protection for statutory tenants for whose protection and benefit the emergency statutes exist in the first instance.

There is still another matter to be mentioned. The tenants, whose apartments were to be " sold " over their heads without option, claimed they were the subject of retaliation, because they had resisted rent increases and had made complaints with respect to the maintenance of services. The bulk of the proffered evidence was excluded by the court. Such retaliation is illegal (§ 10, subd. 2). Evidence to that effect was therefore admissible, and not limited to the period following the taking of title by Mr. Sterling in his individual capacity. That such retaliation be disguised would not avail, nor is it material that the reasons for retaliation arose under different formal ownerships. However, in view of the holding herein, a new trial is not required.

On the trial, and again upon argument in this court, counsel for defendants offered to stipulate to protect the possessory rights of the statutory tenants. The Rent Administrator rejects and objects to the stipulation proffered. The stipulation would not solve the problem. For one, it would affect only the particular intervening tenants. It would not affect noninterveners. It might not affect successors. Moreover, the Rent Administrator, who initiated this action, is entitled to a declaration

as to his responsibilities in connection with plans such as this. Plans such as the Sterling plan may have a coercive effect on tenants. Such possible effect is not completely negated by stipulation extended as a matter of grace. It is the responsibility of the Rent Administrator under the statute to prevent such practices (§ 11, subd. 1).

Declaratory judgment and injunctive relief are needed promptly. If the Rent Administrator must wait until the two-year period has passed and then act only with reference to applications for certificates of eviction, it may be too late. Rights and interests may have vested in bona fide purchasers of stock in the " co-operatively owned " corporation, and the Rent Administrator may be barred from refusing certificates of eviction (See *Matter of Hoenig* v. *McGoldrick*, 281 App. Div. 663, *supra*.)

Accordingly, the Rent Administrator is entitled to a declaratory judgment that purchasers of shares of stock in the 1135 Park Avenue Corporation, allocated to apartments occupied by statutory tenants who have been precluded from purchasing such shares of stock under the plan, will not be entitled to certificates of eviction against such statutory tenants under subdivision 3 of section 55 of the regulations, as such regulation now reads. Moreover, the Rent Administrator is further entitled to injunctive relief requiring defendants to stamp such shares of stock in an appropriate manner to put the purchasers thereof on notice that the plan under which they are issued does not meet the requirements of the regulation, as it now reads, for the purpose of obtaining certificates of eviction. The relief requested declaring the plan an illegal one and enjoining defendants from putting said plan into effect should be denied, except as above provided.

Judgment dismissing the complaints should be reversed and judgment should be granted in favor of plaintiffs to the extent indicated, without costs.

Settle order. Upon the settlement additional provisions may be submitted for inclusion relating to the declaratory judgment and injunctive relief to be granted and consistent with the holding of the court.

COHN, J. P., BASTOW, BOTEIN and BERGAN, JJ., concur.

Judgment unanimously reversed and judgment is directed to be entered in favor of the plaintiffs to the extent indicated in the opinion herein, without costs. Settle order on notice.