OPINION OF THE COURT
Lewis R. Friedman, J.
Petitioner is a rent-controlled tenant who did not purchase her apartment at the time of the cooperative conversion of her building; respondent 308 Owners Corp. (hereinafter Owners) is the owner of the building. Respondent 308 East 79th Street Associates (hereinafter Associates) is the purchaser of the unsold shares in the building allocated to petitioner’s apartment and is the lessee of petitioner’s apartment under a proprietary lease. Petitioner commenced this action under Housing Maintenance Code (HMC) § D26-51.01 (h) (in Administrative Code of City of New York) for an order directing Owners and Associates to remove a series of violations concerning a leak. Associates has moved to dismiss on the ground that it is not an owner under the HMC and is, therefore, not responsible for removing violations.
*733 This case presents an important question which has not previously been answered: What are the rights of a nonpurchasing tenant to obtain repairs from the holder of the shares allocated to the apartment?
The HMC places the responsibility for removing violations upon an "owner” (§ D26-51.01 [h]). The HMC defines "owner” to mean the owner of "the freehold * * * or [any] lesser estate therein” and "any other person, firm or corporation, directly or indirectly in control of a dwelling.” (§ D26-1.07 [a] [45].) Without doubt Owners is an "owner”. So, too, is Associates. It has a leasehold interest in the apartment by virtue of the proprietary lease on the apartment. Further, as a shareholder-proprietary lessee Associates has "direct or indirect control” of the apartment.
Associates relies on Matter of State Tax Commn. v Shor (43 NY2d 151 [1977]) involving the priority of judgment liens, and Silverman v Alcoa Plaza Assoc. (37 AD2d 166 [1st Dept 1971]) involving the applicability of Uniform Commercial Code article 2 for the proposition that the shares are "personalty” and, therefore, it cannot be an "owner”. These cases do not compel that conclusion. In Matter of State Tax Commn. v Shor (supra, p 157) the court noted that "[n]either the stock certificate nor the lease, inseparably joined, can appropriately be viewed or valued in isolation from the other.” "For some [cases] it is a lease; for others it is a compact between co-operative corporation and co-operative tenant.” (43 NY2d, at p 156.) That same analysis was applied in Silverman: "a proprietary lease is no different from any other type of lease.” (37 AD2d, at p 172.) It has long been held that "[t]he lessee of the proprietary lease is in much the same position as any other tenant under the usual leasing arrangement” (Susskind v 1136 Tenants Corp., 43 Misc 2d 588, 590 [Civ Ct, NY County 1964]).
There is a developing body of law holding that a shareholder-tenant in the position such as Associates bears normal relationship of tenant to the owning corporation as does any tenant in a noncooperative building. (See, e.g., Suarez v River-cross Tenants’ Corp., 107 Misc 2d 135 [App Term, 1st Dept 1981]; Hauptman v 222 E. 80th St. Corp., 100 Misc 2d 153, 155 [Civ Ct, NY County 1979]; Laight Coop. Corp. v Kenny, 105 Misc 2d 1001 [Civ Ct, NY County 1980].) It is clear that Associates, by entering into the proprietary lease, takes the apartment subject to petitioner’s tenancy and has succeeded to Owner’s rights with respect to the apartment. (See, Real *734 Property Law § 223.) The effect of the proprietary lease is to make Associates petitioner’s direct landlord.
Associates argues, however, that People ex rel. McGoldrick v Sterling (283 App Div 88 [1st Dept 1953]) establishes that in a noneviction plan, a purchaser of the shares allocated to an apartment does not become the "landlord” of a nonpurchasing rent-controlled tenant. Associates reads McGoldrick far too broadly. The Appellate Division held that a purchasing shareholder by merely purchasing the shares does not become an "owner” within the meaning of the then Emergency Housing Rent Control Law (L 1946, ch 274) so as to obtain the benefit of an "owner-occupancy” eviction of the nonpurchasing occupant. The language of McGoldrick (p 93), that the owning corporation "is the landlord, not the stranger to whom its shares are sold,” must be taken in the context of the court’s effort to read the statute to avoid the result of unintended evictions. "[A] statute may not be read so literally that it yields in application a nonsensical result.” (283 App Div, at p 93.)
It is also significant that the law has changed substantially since the 1953 decision in McGoldrick (supra). General Business Law § 352-eeee set forth a comprehensive scheme of regulation of cooperative conversions. The complete change in the law requires a reinterpretation of the older cases. Mc-Goldrick could not have foreseen the extraordinary growth of cooperative housing in New York City. Nor could it foresee the recent development of an industry involving the purchase and sale of occupied apartments.
Associates’ argument that it is not an "owner” flies in the face of the current structure of noneviction plans. Obviously, Associates expects to receive rent from petitioner. Similarly, Associates expects to have the right to bring proceedings under RPAPL article 7 for nonpayment on the grounds that it is an owner-lessor of the petitioner’s apartment. The language in McGoldrick (supra) would preclude those rights. General Business Law § 352-eeee (2) (c) (ii), however, provides: "[S]uch [eviction] proceedings may be commenced for non-payment of rent, illegal use or occupancy of the premises, refusal of reasonable access to the owner or a similar breach by the non-purchasing tenant of his obligations to the owner of the dwelling unit or the shares allocated thereto”. That section clearly implies that the nonpurchasing tenant has become and is to be treated as the subtenant of the purchaser of the apartment.
*735 That result is consistent with the general expectation of purchasers of shares allocated to occupied apartments. They expect to receive the rent from the occupants and, in exchange, to provide all services required by the lease and the law. Indeed, the recent advertisements of occupied apartments all indicate that purchasers assume landlord’s obligations to the occupants. Associates’ argument that it has no obligations under the HMC would provide an unwarranted windfall to the purchasers of occupied apartments since there would be no legal requirement to maintain the premises.
The Legislature added General Business Law § 352-eeee (3) to require the purchaser of unsold shares to retain a managing agent to "provide to non-purchasing tenants all services and facilities required by law”. That section technically is inapplicable to this case since the offeror is not now in control of the board of directors. Yet it represents the Legislature’s recognition of the purchaser’s responsibility to maintain the apartment.
In short, Associates is an "owner” under the HMC and can be directed to correct the conditions complained of. Associates’ argument that the leak is caused by a defect beyond its direct physical control is of no moment. Associates may have rights under the proprietary lease to force Owners to do the work, so that it is legally capable of curing the leak in any event. But those issues are not the case at this juncture of the case.
Motion to dismiss is denied. Trial set for January 10,1986.