**In re Rommy & Marilyn McNAIR, Debtors.**

**Bankruptcy No. 87 B 19232.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 16, 1988.

Edmund G. Urban, III, Urban & Burt, Ltd., Oak Forest, Ill., for movant.

Melvin Kaplan, Chicago, Ill., for debtors.

Craig Phelps, Chicago, Ill., Standing Trustee.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtors in this Chapter 13 case purchased a co-operative apartment from Charles and Mary Cole, who financed that sale by taking a $60,000 note, secured by assignments of the shares in the co-operative corporation and the proprietary lease of the apartment. The Debtors defaulted, but now seek to save their apartment by proposing a plan that will cure their default. The Coles, claiming that they foreclosed their lien before this case was commenced and that, therefore, the Debtors no longer have any legal interest in the apartment and no right to cure the default, have objected to the confirmation of the plan and moved for relief from the automatic stay so that they can evict the Debtors. The Court finds that the Debtors do have a sufficient interest in the apartment to entitle them to cure the default. Therefore, the Coles' objection will be overruled, the plan will be confirmed, and the Coles' motion for relief from the automatic stay will be denied.

### I. Factual Background.

In July, 1985, the Debtors purchased a co-operative apartment unit from the Coles under a "Co-operative Purchase Agreement". Under that agreement, the Coles assigned to the Debtors (1) 285 shares of stock in the co-operative corporation that owns the apartment building, and (2) the appurtenant proprietary lease between the corporation, as lessor, and the Coles, as lessee of the apartment. The Debtors made cash payments totalling $20,000 and paid the balance with their collateral installment note for $60,000, in which they granted to the Coles a security interest in the 285 shares of stock. In a separate document, the "Collateral Assignment," the Debtors re-assigned all their rights and interests in the stock and the lease back to the Coles. The Coles took possession of the certificate evidencing the stock, but (as far as the record indicates) not the lease.

As of October 31, 1987, the Debtors were $8,008.02 in arrears under the note. On November 10, 1987, pursuant to Ill.Rev. Stat., ch. 26, § 9–505(2) (the strict foreclosure provision of the Illinois Commercial Code), the Coles notified the Debtors in writing of their default on the note and that the stock and the lease would be retained in satisfaction of the obligation unless the Debtors cured the default "by tendering fulfillment of all obligations secured by the collateral", plus expenses.[1] The Debtors claim that on November 24, 1987 they tendered $8,008.02 to the Coles in satisfaction of the default, but that the Coles refused to accept it. The Coles, however, contend that the Debtors offered to cure only a small portion of the default on November 24.

---

1. The November 10th notice from the Coles raises several questions. First, it is ambiguous as to whether the Debtors were being required to pay only the arrearage or the whole note balance. Second, the notice demanded payment of the note by November 24, 1987, which is seven days less than the twenty-one days allotted by § 9–505(2) of the Illinois Commercial Code. Third, the notice indicates that the Debtors had to tender payment in order to stop the Coles from taking the collateral, although under Section 9–505(2) they could have prevented the strict foreclosure and required a sale simply by objecting. Whether these problems affect the validity of the notice, and whether the Debtors made a timely and sufficient tender of the default amount, are issues that need not be resolved because of the view this Court takes of the case.

The Coles served the Debtors with a demand for possession of the apartment on December 9, 1987 and filed a complaint for forcible entry and detainer on December 21, 1987. The Debtors filed their Chapter 13 petition on December 31, 1987, which stayed the state court action. 11 U.S.C. § 362(a). The Coles then filed their motion to modify the automatic stay, which is presently before the Court, to enable them to proceed with the Debtor's eviction. Also before the Court is the Debtors' plan, which provides for the cure of the default and payment of the note.

## II. Discussion.

The issue before the Court requires the resolution of the creditor's rights under state law and the Debtors' rights under the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* The Debtors' right to cure is expressed in § 1322(b)(3) of the Code. The creditor's assertion of a right to foreclose on the collateral is founded upon § 9–505(2) of the Illinois Commercial Code.

The Debtor's Right to Cure: § 1322(b)(3)

Section 1322(b) of the Code lists the permissible provisions of a debtor's reorganization plan. Section 1322(b)(3) of the Code allows a debtor to propose a plan that provides for "the curing or waiving of any default."

Chapter 13 debtors are entitled under that section to reinstate a note and cure a default, notwithstanding any pre-bankruptcy acceleration of the obligation that as a matter of state law would preclude such a cure. *Grubbs v. Houston First American Savings Ass'n.*, 730 F.2d 236, 247 (5th Cir. 1984) (en banc); *In re Taddeo*, 685 F.2d 24, 26–28 (2d Cir.1982). In *Grubbs* and *Taddeo*, the Fifth and Second Circuits allowed the debtors to cure pre-petition defaults on accelerated debts under Section 1332(b)(3). Both courts held that the ability to cure a default entails returning the debt to pre-default status, which necessarily requires "de-acceleration" of the debt. *Grubbs*, 730 F.2d at 241; *Taddeo*, 685 F.2d at 26–27.

The Coles argue, however, that the Debtors cannot cure their default here because their is no default to cure. They maintain that their pre-petition retention of the collateral in satisfaction of the debt is analogous to a sale pursuant to a decree foreclosing a real estate mortgage. Citing *In the Matter of Tynan*, 773 F.2d 177 (7th Cir.1985), they argue that after a foreclosure sale, a debtor cannot cure the mortgage default and that the situation here is the same.

In the context of home mortgages, the prevailing wisdom is that a default under the mortgage note may be cured after a judgment of foreclosure, but not after a sale pursuant to that judgment. *In re Josephs*, 85 B.R. 500, 506 (Bankr.N.D.Ill. 1988); *Cf. In re Clark*, 738 F.2d 869 (7th Cir.1984) (under Wisconsin law, judgment of foreclosure did not sufficiently alter debtor/creditor relationship to deny debtor his right to cure the default); *In re Tynan*, 773 F.2d 177 (7th Cir.1985) (purchase of property at foreclosure sale by third party terminated the debt which left the debtor with nothing to cure). The reasoning of these cases is that it is the sale that both satisfies the creditor's right to payment and divests the debtor of all meaningful interest in the property. But so long as the debtor retains an interest in the property (which becomes property of the estate under section 541(a)), and the creditor's interest is still only a lien to secure payment of the debt, the debtor may cure the default. *Clark*, 738 F.2d at 871. "[A] debtor's right to cure a mortgage default under Section 1325(b)(5) is extinguished when the foreclosure process reaches a point at which the pre-foreclosure relationship between the mortgagor and mortgagee has ended, so that it can be said that the mortgagor's title has effectively been transferred and that there is no longer any mortgage to cure." *Josephs*, 85 B.R. at 504. We must next determine whether the Coles' purported retention of the collateral was effective to transfer the Debtors' interest in the co-operative apartment and satisfy the secured debt.

### Application of the Forcible Entry and Detainer Act

The Debtors argue that what is involved here is a "contract to purchase

lands or tenements" within the meaning of the Illinois Forcible Entry and Detainer Act, Ill.Rev.Stat., ch. 110, §§ 9–104.1, 9–110 (1985). If so, those sections would give the Debtors state law rights to cure the defaults—rights, the Debtors argue, that are a sufficient interest to permit a Chapter 13 cure.

These provisions of the Forcible Entry and Detainer statute do not apply here. The purchase agreement has been fully executed. The Coles transferred their entire interest—the stock and the lease—to the Debtors. The Debtors' default is not under the agreement, but under the collateral note. A collateral note is not a contract to purchase lands or tenements. Rather, it must be analyzed under the law of secured transactions.

### Nature of the Debtors' Interest and Applicability of Article 9

The Coles took the Debtors' stock in the co-operative and their proprietary lease as collateral for the debt. After the Debtors defaulted, the Coles attempted to realize on that collateral through the strict foreclosure procedure provided in Ill.Rev.Stat., ch. 26, § 9–505(2). That section provides that, "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor...."

The notice the Coles sent the Debtors pursuant to section 9–505(2) stated that the note "is secured with 265 shares of 6901 South Oglesby Building Corporation and the proprietary lease", and that, if the Debtors did not satisfy their debt, the Coles "will retain the collateral in satisfaction of [the Debtors'] obligation." The Debtors did not pay, nor did they exercise their right under section 9–505(2) to object to the Coles' retention of the collateral, and the Coles maintain that they retained the collateral in satisfaction of the debt. The issue here is the effect of the procedure followed by the Coles. To decide that, we have to determine the extent of the applicability of Article 9 of the Illinois Commercial Code to co-operative apartments.

We would be inclined to agree with the Coles' argument if the collateral were simply shares of common stock. In such a case, expiration of the twenty-one day period under § 9–505(2) would sufficiently alter the relationship between the debtor and the creditor and terminate the debtor's interest in the collateral so as to preclude a cure at this stage. However, the collateral held by the Coles is not simply common stock. It is both the stock in the co-operative corporation and the Debtors' interest, as lessee, in the long-term proprietary lease. That is the collateral identified in their section 9–505(2) notice, and it is the collateral they took at the time of the transaction. More important, it is both these interests, not just one of them, that comprise the Debtors interest in the apartment.

In a typical co-operative, such as this one, "the co-operative corporation owns the land and the building. Shares in the corporation are sold to each apartment 'owner', who receives a stock certificate, not a deed to real property. The shares entitle the shareholder to a long-term apartment 'proprietary' lease." *State Tax Commission v. Shor*, 43 N.Y.2d 151, 400 N.Y.S.2d 805, 807, 371 N.E.2d 523, 526 (1977). As the *Shor* court also said, 400 N.Y.S.2d at 806, 371 N.E.2d at 524,

> The ownership interest of a tenant-shareholder in a co-operative apartment is *sui generis*. It reflects only an ownership interest in a proprietary lease, and therefore arguably an interest in a chattel real, conditional however upon his shareholder interest in the co-operative corporation, an interest always treated as personal property. The leasehold and the shareholding are inseparable. For some special purposes, the real property aspect may predominate....

For example, a contract for the sale of a co-operative apartment has been held to be a sale of an interest in real estate requiring application of the statute of frauds. *Moloney v. Weingarten*, 118 A.D.2d 836, 500 N.Y.S.2d 320, (2d Dept.1986), *lv to appeal denied*, 69 N.Y.2d 608, 516 N.Y.S.2d 1023, 509 N.E.2d 358 (1987). And the holder of a proprietary lease is an owner of a "freehold ... or [any] lesser estate therein" for

purposes of enforcing a building code. *Star v. 308 Owners Corp.*, 130 Misc.2d 732, 497 N.Y.S.2d 282, 283 (N.Y.Civ.Ct.1985). *See also, Matter of Carton*, 4 B.R. 401, 403 (Bankr.D.Md.1980) (owner's interest in co-operative apartment real estate for purposes of attachment of judgment lien) (Maryland law).

The few Illinois cases in the area have viewed a co-operative apartment owner's interest as an interest in real estate. "The contract [to sell the shares of stock in the co-operative corporation] is a standard form for the construction and purchase of a dwelling unit ... [The co-operative corporation is] merely a mechanical incident[ ] to the basic contract which was for the sale of an interest in real estate." *Brothers v. McMahon*, 351 Ill.App. 321, 115 N.E.2d 116, 117–18 (1953) ("Blue Sky Laws" inapplicable to sale of co-operative apartments). Another court has said that, "The primary interest of every stockholder in such a corporation is the long-term [proprietary] lease and the stock is incidental to such purpose and merely affords a convenient means of combining an ownership interest with the method of sharing proportionately the assessments for maintenance and taxes." *Sinnissippi Apartments, Inc. v. Hubbard*, 114 Ill.App.3d 151, 448 N.E.2d 607, 611, 69 Ill.Dec. 889, 893 (2nd Dist 1983).

On the other hand, other courts have focused on the stock and treated the ownership interest in co-operative apartments as personal property. *Weiss v. Karch*, 62 N.Y.2d 849, 850, 477 N.Y.S.2d 615, 466 N.E.2d 155 (1984) (sale of co-operative essentially a sale of securities, governed by Article 2 of the Uniform Commercial Code); *Friedman v. Sommer*, 63 N.Y.2d 788, 481 N.Y.S.2d 326, 471 N.E.2d 139 (1984) (same); *Silverman v. Alcoa Plaza Associates*, 37 A.D.2d 166, 323 N.Y.S.2d 39 (1971) (Article 2 measures of damages applicable to con-

tract for sale of co-operative apartment); *Shor* (judgment lien on real estate did not attach to apartment owner's interest).[2]

Fortunately, this Court is not required to decide whether the Debtors' interest is realty or personalty. Whatever it is, the proprietary lease, at least, is not subject to Article 9. "This Article does not apply ... to the creation or transfer of an interest in or a lien on real estate, including a *lease* or rents thereunder." Ill.Rev.Stat. Ch. 26, § 9–104(j) (1985) (emphasis added). Under this provision, whether the lessee's interest is realty or personalty, it is not covered by Article 9. "Leasehold interests are treated as personal property in Illinois, and might fall within Article 9 but for this paragraph."[3] Illinois Code Comment, Ill.Ann. Stat. ch. 26, § 9–104(j) (1974).

Even the authorities that treat owners' interests as personal property recognize that a proprietary lease is, nevertheless, a lease. "[A] proprietary lease is no different from any other type of lease." *Silverman*, 323 N.Y.S.2d at 45. *See also, Star*, 497 N.Y.S.2d at 283–84.

■ The Coles, therefore, did not have an Article 9 security interest in the lease when they attempted their strict foreclosure of that interest. That attempted strict foreclosure did not transfer the Debtors' interest in the lease. In addition, without a proprietary lease, the Coles do not have a right to possession of the apartment, and are not in a position to maintain a successful action for possession until they have at least terminated the Debtors' interest in the lease. In short, unlike mortgagees after a valid foreclosure sale, the Debtors still had rights with respect to the property at the time this case was filed.

The Coles argue, however, that they foreclosed on the stock and the owner of the stock has the right to a lease from the corporation. Although neither the lease

---

**2.** It is noteworthy that the decision in *Shor* was principally based on a New York statute expressly authorizing, and specifying a procedure for, co-operative apartment financing. *Shor*, 400 N.Y.S.2d at 807, 371 N.E.2d at 526. In Illinois, such a statute is conspicuous by its absence.

**3.** Notwithstanding that comment, there is authority for treating long-term leases as creating real estate interests so that liens in those interests must be foreclosed as real estate mortgages. *Mcguire v. Cohen*, 44 Ill.App.2d 375, 195 N.E.2d 280 (1st Dist.1964).

nor the corporate bylaws or charter are in this record, the purchase agreement states that the "shares carry the privilege of receiving the proprietary lease...." Co-operative Purchase Agreement, ¶ 1. But there is a difference between the right to receive a lease from the corporation and the Debtors' interest in the lease under which they now occupy the apartment. It is on that latter interest that the Coles attempted to foreclose, and nothing in the record shows that transferring the stock, without more, forecloses that interest. Moreover, allowing the stock to be a Trojan horse for the lease would be to allow a disguised security interest in a lease of real estate—something prohibited by Article 9 itself.

The result here does not mean that co-operative apartments cannot be financed. In a recent edition of a practice-oriented real estate treatise the authors recommend that, in addition to taking an Article 9 security interest and filing a financing statement, "The lender will probably want a memorandum of the lease to be recorded. The assignment of the lease to the lender and the landlord's consent to the assignment are also recorded." R. Kratovil and R. Werner, *Real Estate Law* 535 (9th ed. 1988). That procedure may preclude strict foreclosure as an effective remedy, but that is not a sufficient reason to shave the corners of the co-operative form of home ownership to fit it into the round hole of Article 9 financing. It is for the Illinois General Assembly to establish rules for financing these interests. The General Assembly, in adopting the Uniform Commercial Code, expressly excluded leases from the reach of Article 9. There is no precedent for treating a proprietary lease as a non-lease for Article 9 purposes and no indication that such a result would be consistent with the public policies of Illinois, as expressed in its statutes.

There remains the issue of whether the strict foreclosure resulted in a transfer of the stock as satisfaction of the debt. Of course, it would be unnecessary to decide that issue here if it were clear that the Debtors' retention of an interest in the collateral is sufficient to permit a Chapter 13 cure. But that is not clear. The authorities simply do not deal with a situation where the debt has been satisfied but, because of some defect in the proceedings, the debtor's property interest has not been fully transferred. This Court will therefore deal with the effect of the strict foreclosure.

■ The strict foreclosure failed to satisfy the debt or to transfer the stock. Section 9–505(2) of the Illinois Commercial Code contains specific requirements for a strict foreclosure as we have discussed. The creditor, who must be in possession of the collateral, begins the procedure by making a written "proposal" "to retain the collateral in satisfaction of the obligation." Here, the Coles' proposal was to retain both the stock and the lease. The lease, as discussed above, could not be collateral under Article 9, and, in any event, the Coles did not have possession of the lease. The proposal, therefore, was defective. There is no authority for re-casting the proposal after the fact so that the Coles may retain only a part of the collateral described in it, and statutes such as this should not be liberally construed for the sake of working a forfeiture. Since the Coles could not carry out their proposal, the proposal was of no effect.

Moreover, this result avoids separating ownership of the stock from ownership of the lease, and all the uncertainty and complexities that would entail. Even from the Coles' point of view, a holding that their claim has been fully satisfied by the stock would bring into question the continuing effect of the collateral assignment of the lease. Surely resolution of these issues would entail additional litigation involving the co-operative corporation, a non-party here. At least for this purpose it is appropriate to adhere to the view that, "Neither the stock certificate nor the lease, inseparably joined, can appropriately be viewed or valued in isolation from the other." *Shor*, 400 N.Y.S.2d at 808, 371 N.E.2d at 526. Since the strict foreclosure could not transfer the lease, it should not be deemed to have transferred the stock either.

## Conclusion

For these reasons, the Coles objection is overruled, and Orders will be entered confirming the Debtors' plan and denying the Coles' motion for relief from the automatic stay.